EMILY KAIRIS *vs.* BOARD OF APPEAL OF CAMBRIDGE & another.[1]

Middlesex.   February 5, 1958. — May 9, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Zoning.*

Facts appearing with respect to a parcel of land, with very old, dilapidated buildings thereon, located at the corner of two city streets in a zoning district where public garages without pumps or dispensing of petroleum products outside the buildings were permitted and in an area containing factories and otherwise "largely commercial" showed that the city's zoning board of appeals was justified in granting a variance permitting use of the parcel for a gasoline filling station and "lubritorium."

BILL IN EQUITY, filed in the Superior Court on March 14, 1957.

The suit was heard by *Pecce, J.*

*Joseph A. DeGuglielmo & Lawrence F. Feloney,* for the plaintiff, submitted a brief.

*Samuel B. Mannos,* for the defendant Yogel, trustee.

SPALDING, J.   This is a bill in equity under G. L. c. 40A, inserted by St. 1954, c. 368, § 2, by way of appeal from a decision of the board of appeal granting a variance for the construction of a gasoline filling station and "lubritorium." The bill is brought by an owner of property which adjoins the property for which the variance was granted. The judge made comprehensive findings of fact and ordered a decree to be entered that the decision of the board of appeal was

---

[1] Rose Yogel, trustee.

within its jurisdiction and that no modification of its decision was required. From a decree entered accordingly, the plaintiff appeals. The evidence is reported.

We summarize the findings of the judge as follows: The defendant Rose Yogel, hereinafter called Yogel, is the owner of property at 275 Broadway, Cambridge, at the corner of Broadway and Columbia Street. The plaintiff is the owner of adjoining property (279 Broadway) in which she conducts a restaurant. Yogel's property is in a Business A district, which permits property to be used for a "public garage, provided no pumps are located and no petroleum products are dispensed outside the building." The Business A zone on Broadway extends from Norfolk Street to a point one hundred feet easterly of Columbia Street. The surrounding area is in a Residential C zone. The property in question has been used for stores and dwellings. It is a very old, structurally unsound, three story brick building. The mortar between the bricks is crumbling and the wooden portions, including the piazzas, doors and clapboards, are rotted and broken. There are seven "cold water flats" in the building, four of which are vacant. The condition of the flats is "dilapidated, decrepit and decayed." Attached to this building is an antiquated wooden "shack" which is structurally unsound and not habitable. The condition of both properties is such "that their demolition in the near future seems inevitable." On the side of Broadway on which Yogel's property is located, between Columbia and Elm streets, there are no other buildings used for residential purposes. Within the Business A district there are few buildings used for such purposes. Adjacent to Yogel's property on Columbia Street is a soap factory and in the next block on Broadway is a glass factory. Adjacent to the plaintiff's property on Broadway is a gasoline filling station with a "lubritorium." Directly across the street is another filling station and "lubritorium." Close to Yogel's property are an electric appliance company, a "heavy trucking concern," many retail stores, and other filling stations.

The "district is now largely commercial with a distinct trend towards becoming completely commercial."

Vehicular traffic at the intersection of Broadway and Columbia Street is heavy and Yogel's property "forms a 'blind corner.'" Despite traffic lights at the corner there have been several accidents there recently. If the variance sought by Yogel is granted, the existing buildings will be demolished and a filling station and "lubritorium" will be constructed near the rear and side lot lines so as to afford a large, open area at the intersection of Columbia Street and Broadway. "This will enhance the view to approaching traffic . . . and in large measure eliminate the existing traffic hazard."

After finding the foregoing facts the judge concluded (1) that the present use of Yogel's property "cannot be maintained without the expenditure of unreasonable sums of money and that such expenditures . . . are economically inadvisable"; (2) that in its present condition "the most appropriate use of the . . . property is to demolish all buildings . . . thereon"; (3) that the present plight of the property involves more than mere pecuniary hardship but is one of extreme pecuniary hardship; (4) that the demolition of the buildings and the construction of the proposed filling station and "lubritorium" are a "reasonable and appropriate development of the . . . property"; (5) that by reason of the existing filling stations near the Yogel property the proposed variance would not "significantly jeopardize the uses permitted in that district"; (6) that there are special circumstances attaching to the Yogel property which do not apply to other properties in the district; (7) that granting the variance will not result in material damage or prejudice to other property in the district; (8) that the granting of the variance will promote the general welfare of the city by eliminating a traffic hazard; and (9) that the granting of the variance would result in desirable relief without substantial detriment to the public good and without substantially derogating from the intent and purpose of the zoning ordinance.

By G. L. c. 40A, § 15, a board of appeals is empowered to "authorize upon appeal, or upon petition in cases where a particular use is sought for which no permit is required, with respect to a particular parcel of land or to an existing building thereon a variance from the terms of the applicable zoning ordinance or by-law where, owing to conditions especially affecting such parcel or such building but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law, but not otherwise."

In addition to the evidence, the judge had the benefit of a view. See *Keeney* v. *Ciborowski*, 304 Mass. 371, 372. He could take into consideration the fact that the property was in a zone which permitted a not dissimilar use (garages), provided no pumps are located and no petroleum products are dispensed outside the building. He could also take into consideration the facts that there were already two nonconforming uses near by similar to the use sought by the proposed variance, and that the district was "largely commercial with a distinct trend towards becoming completely commercial." And there is the added factor of the elimination of the traffic hazard. The judge further could conclude that to deny the variance would involve substantial hardship to the applicant. We are of opinion that the board of appeal was justified in authorizing the variance granted. *Hammond* v. *Board of Appeal of Springfield*, 257 Mass. 446. *Marinelli* v. *Board of Appeal of Boston*, 275 Mass. 169. *Amero* v. *Board of Appeal of Gloucester*, 283 Mass. 45. *Tanzilli* v. *Casassa*, 324 Mass. 113. *Rodenstein* v. *Board. of Appeal of Boston*, *ante*, 333.

The plaintiff attacks the finding that the present use of Yogel's property cannot be maintained "without the expenditure of unreasonable sums of money" which would be "economically inadvisable." It is true that there was no

evidence directly bearing on this point. But considering the fact that the judge saw the property, we should hesitate to say that this was not a permissible inference. But however that may be, this finding was not essential to his ultimate conclusion, and even if it lacked evidential support, it would not vitiate the decree. Several other findings are challenged as unsupported by the evidence, but they do not require discussion. We are satisfied from an examination of the evidence that they were not plainly wrong.

*Decree affirmed with costs of the appeal.*